1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                           EUREKA DIVISION

7

8     JOHN S.,[1]                          Case No.  24-cv-00062-RMI

9                   Plaintiff,
                                           **ORDER ON MOTIONS FOR**
10           v.                            **SUMMARY JUDGMENT**

11    MARTIN J. O'MALLEY, et al.,          Re: Dkt. Nos. 9, 10

12                   Defendants.

13           Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that

14    Plaintiff was not disabled under Title II of the Social Security Act.  *See* Admin. Rec. at 1.[2]  The

15    Appeals Council of the Social Security Administration declined to review the ALJ's decision.  *Id.*

16    As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security,

17    appropriately reviewable by this court.  *See* 42 U.S.C. § 405(g), 1383(c)(3).  Both parties have

18    consented to the jurisdiction of a magistrate judge (Dkts. 4, 5), and both parties have filed briefs

19    (Dkts. 9, 10).  For the reasons stated below, the decision of the ALJ is REVERSED and the case is

20    REMANDED FOR FURTHER PROCEEDINGS consistent with this order.

21        **I.      Background**

22           Plaintiff was born in 1963.  AR at 27.  He spent his career working as a sheet metal

23    mechanic in the HVAC industry, a job which often entailed lifting 100 pounds or more.  *Id.* at 38–

24    40.  Plaintiff's career ended in 2018, when he suffered a heart attack, after which doctors were

25    _____

26    [1] Pursuant to the recommendation of the Committee on Court Administration and Case
      Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

27    [2] The Administrative Record ("AR"), which is independently paginated, has been filed in eight
28    attachments to Docket Entry #7.  *See* Dkts. 7-1 through 7-8.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    unable to properly insert stents in Plaintiff's arteries. *Id.* at 19, 40. Although Plaintiff was cleared

2    to return to work after the failed stent surgery, he ultimately took early retirement, as he found it

3    "difficult to . . . get through the day" after the procedure. *Id.* at 40.

4        Plaintiff's physical troubles extended beyond the heart attack and failed surgery, however.

5    He reported tenderness in his left elbow and right knee as early as 2017. AR at 352–53. In 2018,

6    he reported heel pain which ultimately required injections. *Id.* at 327. In 2019, after a kickboxing

7    workout, he developed pain in his right shoulder and both elbows. *Id.* at 321. This pain persisted

8    for a month before Plaintiff saw a doctor, was rated 7 out of 10, and did not respond to ibuprofen.

9    *Id.* at 326. However, while an exam detected tenderness, no other abnormalities were found in

10    Plaintiff's elbows and shoulders. *Id.* at 323–24. In 2020, Plaintiff complained of pain in his right

11    hip as well as in his shoulder, hands, and knees. *Id.* at 302. An MRI indicated "multifocal

12    degenerative changes" in Plaintiff's hip connective tissue. *Id.* at 401. By late that year, care

13    providers noted that Plaintiff's range of motion in his left knee and shoulders was limited due to

14    pain. *Id.* at 282. Further, Plaintiff's knee tissue was swollen. *Id.* at 283. X-rays showed minimal

15    to mild arthritis in Plaintiff's shoulders and knees. *Id.* at 276–77, 397. In 2021, Plaintiff

16    complained of "right hip pain 8/10 for a few weeks . . . . Using ibuprofen 800mg twice daily

17    without relief for 2 days." *Id.* at 475. Plaintiff additionally suffers from, and was treated for,

18    dizziness and vertigo. *Id.* at 315, 338.

19        Plaintiff also has a history of mental illness. His medical records reflect an episode of

20    major depressive disorder in 2009. AR at 330. In 2020, Plaintiff sought anger management

21    counseling and noted a "history of anxiety, lots of worry, marital conflict." *Id.* at 298. An

22    evaluator noted that Plaintiff screened negative for anxiety[3] and PTSD, but showed minimal

23    symptoms of depression. Ultimately, Plaintiff was informed that treatment for his mental illnesses

24    was not medically necessary. *Id.* at 293. Plaintiff was encouraged to attend anger management

25    classes regardless. *Id.*

26    **II.**      **Procedural History**

27

28    [3] However, Plaintiff endorsed experiencing the anxiety symptoms on the screening questionnaire for "[s]everal days[,]" so it is unclear why the result was negative. AR at 297.

1    Plaintiff filed for Social Security benefits in 2021, alleging an onset date of September 1,

2    2018.  AR at 81.  He submitted a function report alleging that "[l]ack of stamina prevents me from

3    working, also back, knee, hip, shoulder, and elbow pain limit me."  *Id.* at 205.  He claimed that he

4    was no longer able to kneel or work at ground level "due to pain in my knees and light-

5    headedness."  *Id.* at 206.  He reported difficulty lifting, walking, stair-climbing, squatting, sitting,

6    bending, kneeling, remembering things, using his hands, standing, completing tasks, and

7    concentrating, claiming that "[a]rthritis and heart disease are affecting my ability to do physical

8    things and think clearly."  *Id.* at 210.  He reported modest activities of daily living, including

9    feeding pets, watering the landscape, vacuuming, laundry, and occasional babysitting and dog-

10    walking.  *Id.* at 206.  He claimed to need joint braces when he experienced pain.  *Id.* at 211.  He

11    also claimed that he could not think clearly due to his conditions, did not finish what he started,

12    and had a one-hour attention span.  *Id.* at 210.

13    As part of the application process, Plaintiff was examined by Dr. Katherine Kenny of

14    MDSI Physician Services.  AR at 440.  Plaintiff complained to Dr. Kenny of heart problems; low

15    back pain; arthritis in his hips, knees, elbows, wrists, and shoulders; and tennis elbow.  *Id.*  Dr.

16    Kenny recorded that Plaintiff's

> main complaint is ongoing chronic pain issues, in particular low back
> pain which started at age 21 when he began working in the
> construction field and has now persisted and worsened.  He states that
> the pain travels into both legs with intermittent numbness and
> tingling, equally in the bilateral lower extremities.  As long as he takes
> muscle relaxants and ibuprofen, he is able to walk and lift
> intermittently for a few hours at a time.  At other times, the pain
> becomes so significant and severe that he is chair-bound and bed-
> bound.

*Id.* at 441.  Plaintiff reported that he did exercises for his knee and right elbow.  *Id.*  He stated that

"icing his joints is minimally helpful and medications can provide some help, but the pain comes

back."  As a result of his impairments, "[h]is standing, walking and lifting tolerances have all

decreased[.]"  Further, he could not sit during flareups of his hip arthritis.  *Id.*

Dr. Kenny noted that while Plaintiff could "carry out tandem gait and toe-to-heel

maneuvers[, h]is squatting capacity is decreased by about 40% and he has pain with walking on

his toes and heels and favors the right leg somewhat."  AR at 443.  Dr. Kenny also observed

United States District Court
Northern District of California

3

trigger points in the muscles of Plaintiff's low back, including "some palpable spasm in the lumbar paraspinal muscles." *Id.* at 444. She noted some effusion, tenderness, and pain with motion in Plaintiff's left knee. *Id.* She further noted that "[s]ignificant pain is present on the right shoulder with passive internal rotation, external rotation, forward flexion, and abduction." Also, she observed that "extension of the bilateral elbows causes pain, but he is able to pronate and supinate without difficulty in both elbows." Finally, she noted that Plaintiff had "5/5" strength in both arms and both legs, intact grip strength, normal muscle bulk and tone, and no signs of atrophy. *Id.*

Dr. Kenny diagnosed Plaintiff with axial low back pain, right shoulder pain with known arthritis and a possible rotator cuff injury, bilateral tennis elbow, and left knee osteoarthritis. AR at 445. She opined that Plaintiff could alternate between sitting and standing with normal breaks for six hours in an eight-hour workday; could sit for an entire workday; could frequently climb stairs, balance, and stoop; could occasionally climb ladders, scaffolds, or ropes; and could occasionally kneel or crawl. *Id.* However, she opined that Plaintiff could only lift, carry, push, or pull 20 pounds occasionally or 10 pounds frequently. *Id.*

Plaintiff was also examined by Dr. Tiadora Kim during the application process. AR at 448. Plaintiff told Dr. Kim that "[a]s a kid I could never concentrate, it almost felt difficult to stay focused. Parents going 'come on', me going 'I can't' or whatever. I was always a C student. When I got to things I liked, I could focus on it." *Id.* at 449. He also reported "significant anxiety due to work stress" after his heart attack, which "led to poor performance" on the job. *Id.* at 448. Plaintiff "also report[ed] struggling with depression, and a thyroid issue leading to an 'unbalanced mental state.' Symptoms include muscle tension, concentration difficulty, insomnia, and irritability leading to personal aggression." *Id.*

Dr. Kim conducted a mental status examination, which indicated that Plaintiff's attention was "[m]oderately impaired" and his concentration was "[m]arkedly impaired." AR at 450. Overall, the mental status exam results indicated mild cognitive impairment. *Id.* at 452. Dr. Kim diagnosed Plaintiff with unspecified anxiety and depression disorders as well as "Rule Out" ADHD. *Id.* at 453. Based on the mental status exam, a clinical interview, behavioral

1   observations, and the psychiatric symptoms associated with Plaintiff's diagnoses, Dr. Kim

2   concluded that Plaintiff was only mildly impaired in his ability to understand, remember, and

3   perform either simple or complex instructions. *Id.* 454. However, she concluded that Plaintiff

4   would be moderately impaired in maintaining concentration, attention, persistence, and

5   consistency during a normal workday. *Id.*

6        Plaintiff's application for benefits was initially reviewed by a state agency. The agency

7   determined that Plaintiff's heart disease and joint abnormalities were severe impairments, but that

8   Plaintiff's hypertension and psychological issues were not. AR at 68–69. The agency further

9   deemed Plaintiff's limitation in concentrating, persisting, or maintaining pace to be only "[m]ild"

10  because "aside from being prescribed some psychotropics, he does not appear to be receiving any

11  ongoing psych or mental health treatment." *Id.* at 69–70. While the agency found Dr. Kenny's

12  opinion "persuasive and consistent" with the evidence, it disregarded her findings about Plaintiff's

13  ability to lift and carry, finding that he could "frequently" lift 25 pounds and "occasionally" lift as

14  much as 50 pounds. *Id.* at 72–73. Ultimately, the agency found that Plaintiff was not disabled.

15  *Id.* at 78.

16       Plaintiff appealed the state agency's determination to the Social Security Administration.

17  At a hearing before the ALJ, Plaintiff stated that he was disabled due to "the stamina and the pain I

18  deal with every day." AR at 44. He noted that some activities were painful and that he could not

19  do them without prescription pain medication. *Id.* He stated that he lost his breath when walking

20  and limped due to right hip pain. *Id.* at 53, 55. He testified that he also had pain in his knees,

21  elbows, neck, and one shoulder. *Id.* at 53. Despite this, he said he was reluctant to take more

22  medication than he did already. *Id.* He estimated that he could lift and carry 15 to 20 pounds

23  without pain. *Id.* at 54. He also claimed that he required depression medication due to stress in

24  his relationship, but said that he did not regularly see a counselor. *Id.* at 49.

25       A vocational expert (VE) testified at the same hearing. The ALJ asked the VE whether a

26  person of Plaintiff's age, education, and work experience who was limited to medium work with

27  certain postural limitations could perform Plaintiff's past work. AR at 57. The VE said that

28  person could not. *Id.* However, the VE said that such a person could work as a "cleaner II," a

United States District Court
Northern District of California

"hand packer," or an agricultural produce packer.  *Id.*  The VE said that those jobs could be performed by a person who was "limited to understanding, remembering, and carrying out at most simple instructions[.]"  *Id.* at 58.  However, when the ALJ asked about a person who "would be off task approximately 15% of the workday[,]" the VE responded that this limitation "would eliminate all work."  *Id.*

The ALJ ultimately determined that Plaintiff was not disabled.  AR at 28.  The ALJ performed the required five-step analysis, determining at Step 1 that Plaintiff had not worked since the alleged onset date.  *Id.* at 19.  At Step 2, the ALJ determined that Plaintiff's heart disease and right knee arthritis were "severe" impairments.  *Id.*  However, she determined that Plaintiff's obesity, thyroid condition, hypertension, vertigo, right shoulder osteoarthritis, and depression were not severe impairments.  *Id.* at 19–20.  Further, she dismissed Plaintiff's back pain, tennis elbow, ADHD, left foot injury, and hip impairments as either non-severe or not medically determinable.  *Id.* at 20.

At Step 3, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet any listings.  AR at 22.  In making this determination, she concluded that Plaintiff had a "moderate" limitation in concentrating, persisting, and maintaining pace when both his physical and mental ailments were accounted for.  *Id.* at 24.  However, because she determined that Plaintiff was only mildly limited in his other broad areas of functioning, she found that Plaintiff did not meet a listing.  *Id.* at 23–24.

The ALJ determined that Plaintiff could perform "medium" work with certain limitations[4] and could understand, remember, and carry out simple instructions.  AR at 24–25.  The ALJ claimed to rely on "the totality of the medical data, along with the claimant's full range of activities of daily living[.]"  *Id.* at 26.  The ALJ echoed the findings of the state agency in making this determination, noting that the agency "saw more medical evidence than did" Dr. Kenny.  *Id.*  By contrast, the ALJ dismissed Dr. Kenny's findings as "overly restrictive considering the internal examination . . . which found full (5/5) motor strength throughout including normal grip strength,

---

[4] Specifically, Plaintiff could only "frequently climb, stoop, kneel, crouch, crawl and . . . reach overhead with the right upper extremity[.]"  AR at 25.

normal bulk and tone with no atrophy, no lower extremity edema, normal gait, negative straight leg-raising signs, grossly intact sensation, and equal reflexes, etc." and Plaintiff's "full range of many physical activities[.]"  The ALJ also dismissed Dr. Kim's opinion, noting that Plaintiff's depression was non-severe because Plaintiff "had not seen a counselor or therapist for several years" and "was found not to require treatment."  Finally, while the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*  The ALJ did not elaborate further on Plaintiff's credibility.

The ALJ concluded that Plaintiff was unable to perform his past work.  AR at 27.  Further, the ALJ concluded that the "cleaner II" position suggested by the VE would involve constant, rather than frequent, reaching and was thus not available to Plaintiff.  *Id.* at 28.  However, the ALJ concluded that Plaintiff could perform the hand packer and produce packer jobs suggested by the VE.  *Id.*  Accordingly, the ALJ found that Plaintiff was not disabled.  *Id.*

Plaintiff appeals.

### III.    Standard

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing.  42 U.S.C. § 405(g).  The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  *Id.*  A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997).  "In determining whether the Commissioner's findings are supported by substantial

evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**IV.    Analysis**

The court finds that the ALJ erred at Step 2 by failing to apply the correct standard in determining that some of Plaintiff's impairments were not determinable, at Step 4 by failing to properly evaluate Plaintiff's subjective complaints of pain, and at Step 5 by failing to incorporate a cognitive limitation into the hypothetical given to the VE.[5]

*a.    Severe and Medically Determinable Impairments*

Step 2 of the disability determination process is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal alterations omitted). At Step 2, the ALJ "must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"[.]" AR at 18 (citing 20 C.F.R. 404.1520(c)). An "impairment" is a condition "result[ing] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-4P, 1996 WL 374187. If a condition is not found to be a medically determinable impairment, it need not be considered later in the ALJ's analysis. *See* AR at 18–19 ("the undersigned must consider all of the claimant's *impairments*, including *impairments* that are not severe") (citing 20 C.F.R. 404.1520(e), 404.1525; SSR 96-8P, 1996 WL 374184) (emphasis added).

The ALJ appears to have erred in deeming some of Plaintiff's conditions not to be

---

[5] Plaintiff also assigns Step 5 error based on the ALJ's finding that a significant number of jobs were available in the national economy. Because the ALJ's finding was based on the VE's testimony, and as the VE will need to provide new testimony on remand for the reasons explained below, the court does not address this assignment of error.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  medically determinable impairments.  For instance, the ALJ found that "there was not a medically

2  determinable impairment relating to left foot injury[.]"  AR at 20.  However, an X-ray ultimately

3  revealed that Plaintiff had posterior calcaneal enthesopathy in that foot.  *Id.* at 417.  Additionally,

4  she dismissed Plaintiff's back pain as a symptom rather than a diagnosis, noting that there were no

5  lumbar *spine* abnormalities noted in the record.  *Id.* at 20.  However, Dr. Kenny's exam noted

6  trigger points on Plaintiff's low back, and one of Plaintiff's lumbar *muscles* spasmed palpably on

7  examination.  This indicates that Plaintiff may have displayed determinable signs of a back

8  problem as opposed to merely subjective symptoms.  *See* SSR 96-4P, 1996 WL 374187.

9  Error at Step 2 is harmless if "the ALJ went on to address the concerns raised by [the

10  plaintiff] at subsequent points within the five-step framework."  *Brown v. Berryhill*, 2018 WL

11  4700348, at *14 (N.D. Cal. Sept. 29, 2018) (citing *Lewis v. Apfel*, 498 F.3d 909, 911 (9th Cir.

12  2007)).  Here, however, it does not appear that Plaintiff's back and foot conditions were

13  incorporated into the ALJ's analysis.  Accordingly, the court cannot say that the ALJ's failure to

14  properly consider the severity of these conditions was harmless.  Remand is therefore required.

15  *b.  Lifting Capacity and Complaints of Pain*

16  Social Security regulations provide that

17  for individuals of advanced age who can no longer perform
vocationally relevant past work and . . . who have only skills that are
18  not readily transferable to a significant range of semi-skilled or skilled
work that is within the individual's functional capacity, . . . the
19  limitations in vocational adaptability represented by functional
restriction to light work warrant a finding of disabled.
20

21  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c).  The ALJ found that Plaintiff was "an individual

22  of advanced age[] on the alleged disability onset date" and unable to perform his past work.  AR at

23  27.  However, the ALJ declined to determine whether Plaintiff's job skills were transferrable

24  because she found that Plaintiff could perform some "medium" work.  *Id.* at 24–25, 27–28.

25  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying

26  of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

27  Plaintiff argues that he is incapable of performing medium work.  He points to Dr. Kenny's

28  opinion, which states that he is limited to lifting no more than 20 pounds occasionally.  This is

9

1    consistent with a limitation to light work.  20 C.F.R. § 404.1567(b) ("Light work involves lifting

2    no more than 20 pounds at a time . . .").  Notably, Dr. Kenny appears to have arrived at this

3    conclusion on the basis of Plaintiff's pain symptoms rather than Plaintiff's strength.  AR at 444

4    ("Significant pain is present on the right shoulder" with many types of movement and "extension

5    of the bilateral elbows causes pain," but "[s]trength is 5/5 in the bilateral upper and lower

6    extremities, including grip.  Normal bulk and tone, no atrophy noted."); *see also id.* at 441

7    ("[I]cing his joints is minimally helpful and medications can provide some help, but the pain

8    comes back.  His standing, walking, and lifting tolerances have all decreased, and he also has

9    bilateral shoulder pain, right greater than left.").  Plaintiff testified to similar limitations before the

10   ALJ, noting that he could only lift "about 15 to 20 pounds without pain." *Id.* at 54.  He also

11   testified that he avoided lifting his one-year-old grandchild up due to pain. *Id.* at 43.  The average

12   child weighs between 19.5 and 27 pounds between the ages of 12 and 24 months.  National Center

13   for Health Statistics, *WHO Growth Charts–Download*, CENTER FOR DISEASE CONTROL AND

14   PREVENTION, https://www.cdc.gov/growthcharts/who-charts.html (Sept. 2, 2024).

15           The ALJ rejected Dr. Kenny's proposed limitations in part because Plaintiff's strength was

16   normal.  AR at 26.  However, other district courts in this state have found that it is error to

17   disregard a pain-related lifting restriction based solely on strength findings. *Wisler v. Comm. of*

18   *Soc. Sec'y*, 2022 WL 718410, at *5 (E.D. Cal. Mar. 10, 2022) (rejecting use of normal motor

19   strength findings to discount "asserted limitations[] which were generally based on pain

20   symptoms"); *Solano v. Saul*, 2021 WL 792735, at *6 (E.D. Cal. Mar. 2, 2021) (reversing where

21   "the ALJ failed to explain how Plaintiff's motor strength and grip strength are inconsistent with

22   the lifting and carrying restrictions, which [the doctor] indicated were not based upon the strength

23   testing, but instead 'due to . . . pain.'").

24           Indeed, it appears that the ALJ failed to directly address Plaintiff's allegations of pain

25   whatsoever.  This was error.  Where a claimant's impairment "could be reasonably expected to

26   produce the pain . . . alleged . . . . and there is no evidence of malingering, the ALJ can reject the

27   claimant's testimony about the severity of her symptoms only by offering specific, clear and

28   convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

United States District Court
Northern District of California

10

1    (internal quotations omitted).  While the ALJ found that "Plaintiff's medically determinable

2    impairments could reasonably be expected to cause the alleged symptoms[,]" she offered no

3    specific, clear and convincing reasons for discounting Plaintiff's pain symptom testimony, stating

4    only that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

5    symptoms are not entirely consistent with the medical evidence and other evidence in the

6    record for the reasons explained in this decision."  AR at 26.  This is insufficient as a matter of

7    law.  "The ALJ must specify what testimony is not credible and identify the evidence that

8    undermines the claimant's complaints—general findings are insufficient."  *Burch*, 400 F.3d at 680

9    (internal quotations and alterations omitted).

10       Nor can the court say that this error was harmless.  Plaintiff's pain allegations, if believed,

11    could preclude him from medium work, thereby rendering him disabled in the absence of

12    transferable skills.  These allegations also corroborate Dr. Kenny's assessed limitations.   While

13    the ALJ used Plaintiff's activities of daily living to discredit Dr. Kenny's limitations, AR at 26, the

14    court cannot say that these limitations were discredited so conclusively that Plaintiff's allegations

15    of pain when lifting must be disbelieved.  For example, many of the activities cited have nothing

16    to do with lifting.  *Id.* at 25 (mentioning kneeling, hiking, and kickboxing).  Others may involve

17    lifting, but the court cannot say with confidence that they necessarily involve lifting more than 20

18    pounds at a time with any degree of success.  *Id.* (Plaintiff lifts and carries "things" of unspecified

19    weight, babysits grandchildren, is "active" around his property, and once injured himself moving

20    boulders).

21       For these reasons, remand is required for the ALJ to properly consider and evaluate

22    Plaintiff's subjective pain symptoms and, if necessary, reformulate Plaintiff's residual functional

23    capacity accordingly.

24       c.   *Mental Impairments*

25       In *Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed. App'x 211 (9th Cir. 2009), the Ninth

26    Circuit held that where "the medical evidence establishes, and the ALJ accepted, that [a claimant]

27    does have difficulties with concentration, persistence, or pace[,]" the ALJ's hypothetical questions

28    to the vocational expert must include those limitations.  *Id.* at 212.  While *Brink* is an unpublished

United States District Court
Northern District of California

decision, several courts in this District have applied it in circumstances similar to these. *See, e.g., Beall v. Berryhill*, 2017 WL 11689924, at *6 (N.D. Cal. Sept. 22, 2017), *Rosas v. Colvin*, 2015 WL 9455475, at *12 (N.D. Cal. Dec. 28, 2015). The thrust of these cases is that even "simple, routine, repetitive" jobs like hand packing can entail "'repetitive, assembly-line work' that 'might well require extensive focus or speed' not contemplated by the hypothetical question." *Rosas*, 2015 WL 9455475, at *12 (quoting *Brink*, 343 F. App'x at 212). Indeed, even courts in the Northern District which have opted not to apply *Brink* "have interpreted *Brink* as limited to cases in which medical evidence demonstrates the plaintiff's difficulties in concentration, persistence, or pace, but does not demonstrate that these may be translated into limitations to simple or repetitive work." *Bennett v. Colvin*, 202 F.Supp.3d 1119, 1127 (N.D. Cal. 2016); *see also Murray v. Colvin*, 2014 WL 1396408, at *4 (N.D. Cal. Apr. 10, 2014) (Brink inapposite where "*medical evidence supports a finding* that Plaintiff is capable of performing one-to-two step instructions despite any limitations in concentration, persistence of pace") (emphasis added).

Here, the ALJ found that "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation." AR at 24. No finding was made as to whether Plaintiff could perform simple tasks regardless of his limitation, and the court did not note any medical evidence in the record to support such a finding. However, the ALJ considered the determination of a moderate impairment "only academic, as the Step 5 finding . . . predisposes a restriction to unskilled work, and the record provides no objective medical support for a finding that the claimant would have marked limitations in this category." *Id.* The ALJ cites no authority for the proposition that difficulties in concentrating, persisting, or maintaining pace need only be incorporated into hypotheticals when "markedly" severe. Indeed, *Brink* itself involved a moderate limitation in this domain. 343 Fed. App'x at 212. So did *Rosas* (2015 WL 9455475, at *12) and *Beall* (2017 WL 11689924, at *6). Therefore, it was error for the ALJ not to incorporate Plaintiff's concentration, persistence, and pace limitations into the vocational expert's hypothetical question. On remand, the ALJ is directed to either incorporate these limitations into the hypothetical or to make a finding that Plaintiff may perform simple, repetitive work regardless of these limitations.

**IT IS SO ORDERED.**

Dated: March 25, 2025

_____
ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California